Mr. Dickey. May it please the court, my name is Gary Dickey of Dickey, Campbell & Sahag Law Firm in Des Moines, representing Keshon Baxter, who asked this court to reverse his conviction for possession of a firearm as an unlawful user on the basis of the Second Amendment. In the district court, the government submitted two historical analogs to justify its prosecution in this case, and then a third on appeal. We submit that the district court should be reversed because its ruling was the product of both legal and factual errors. I will take the historical analogs as proffered by the government in turn, unless this panel has any specific questions. Starting with the first justification was analogizing Mr. Baxter's drug use to colonial laws with respect to institutionalizing the mentally ill. So as a legal matter, I think the district court got it incorrect because if we look at those historical analogs, as set out in this court's precedent, not as identified by the government in their briefing, it wasn't just simply run-of-the-mill mental illness writ large. It was the type of mental illness that was contemplated that would rise to the level of lunacy such that an individual could be institutionalized. And I don't think that there is anything in this record that would suggest that Mr. Baxter's drug use, in this case marijuana use, rose to the level that somebody could institutionalize him. I think you're wrong about that. I think you're wrong. I think we said mentally ill and dangerous. We did not say to the point of lunacy. Remember, you do not need a dead ringer, right? And so you're requiring a dead ringer. We used institutionalization as an example of why guns were taken away. But I don't think you necessarily need to show that somebody's a lunatic. Okay, so I think that goes to the why, which we would concede that if somebody's drug use, if you could equate it to somebody who's mentally ill and dangerous, that checks the why. But then if you look at the how, I mean, again, the problem, it's hard for us to look at the how because the government didn't- The how is the facial challenge. The why is the, in this case, it becomes the as-applied challenge. In other words, you're not really so concerned about the law in an as-applied challenge. That's why as-applied challenges are available. With a facial challenge, it's whether or not the law as a facial matter meets the analogs. Okay. It's complicated, but this is how- And the Supreme Court's made it complicated on as-applied versus facial, too. I mean, that's why it's complicated. Well, so I'll use the analysis of Rahimi. So with respect to the how that was identified in Rahimi, you had to have a pre-deprivation due process. So there was a hearing in which somebody was found to have needed a no-contact order. And so that's the how that fit, that justified the regulation in Rahimi. That is not present here. There is no pre-deprivation notice provided to Mr. Baxter. But I think Rahimi – actually, I don't think. I know Rahimi was a facial challenge.  And so we're back to sort of that thing. The how makes a difference in a facial challenge. You've got to line it up. In other words, if it doesn't line up with the previous analog, then it's constitutional, and you have to bring your as-applied challenges to get to whether or not this person is regulable. Okay. So I agree that's true on a facial challenge. I understand that both prongs of how and why would also apply to an as-applied challenge. It can.  But it's not in the same way. Okay. Yeah. Well, then I'm not sure that the law is clear on that. I don't know that the government has met its burden anyway. But setting that aside, I think Perez clearly requires some type of causal connection between the drug use such that it made a person analogous to somebody who is mentally ill. And I don't think that the record supports that. So that's the factual error in the record. So when we get to that, I just want to ask a few questions. So my understanding of the facts on this is as follows, and I just want to pull up the facts that I emphasized in my own notes, which is here you had videos showing him waving an AK-47 out of the window shouting, gang, gang, gang. You have, that's strange, history of violence using marijuana. And he had threatened to shoot someone. He had assaulted children, menaced his mother with a knife, and led police on a high-speed chase. And then on the night of the arrest, he's running around downtown Des Moines while attempting to fight with rival gang members. And he keeps going. So he's doing some strange stuff. And that's what the district court is saying. He's acting like he's mentally ill. And he's dangerous because he's waving guns around and yelling, gang, gang, gang. So why doesn't that fit cleanly into a mentally ill and dangerous person? So for a couple of reasons, so I'll kind of take those in turn. So the court, taking a look at the criminal history, he's got a criminal history of violence. I don't think that the record evidence supports that that is violence that is driven by marijuana use. So we have violence. We have marijuana use. We do not dispute that. I don't think there's a causal connection to any of the criminal history. Does there have to be? I think that's what Perez says. I mean, you know, Perez says, did the marijuana cause him, and I'm quoting, did the marijuana cause him to act in an outwardly erratic or aggressive manner that would, in context, be reasonably perceived as disturbing or dangerous? That's fair. That's what Perez says. That's not what Beasley and Cooper say. I think what Perez means by causal, if I'm reading it correctly, is associated with, correlated with. Do they happen at the same time? Because if you take Cordova-Perez literally, it means, oh, man, I was dangerous and mentally ill just by myself. And then I took marijuana, and I was still dangerous and mentally ill. So obviously my dangerousness was not caused by the drugs, and that cannot be the rule. We can't allow people who are mentally ill to then go take drugs and say, oh, I'm innocent because, you know, the drugs didn't cause me to be mentally ill. Fair point. All I can do is apply Perez as it's written. It's fair. It is a fair point. And the district court did not apply Perez as it's written. I mean, in Perez, quote, acting unpredictably in highly dangerous behavior while under the influence is close, not enough. I mean, those are direct findings in Perez. Now, you also raise an interesting point, because I do think that there is, although not expressed, inherently a temporal nexus that is required. That's the problem I have going back to when he's 12 years old. And, you know, does that show he's not a responsible person? We'll concede that. Rahimi says being irresponsible is not enough. And that's kind of really what the problem with the district court's analysis is, is that we're going to pick dangerousness, kind of cherry pick it at one time in his life. We're going to cherry pick the drug use at one time of his life. And then we're going to cherry pick the possession on the night of the arrest. And then we're going to put those all together. I think your question implies that there must be a temporal nexus, and I don't think it's there. So if it's a Venn diagram, I think those circles have to overlap. And that's really the critical error of the district court's factual analysis is, I guess legal too, there is no overlap there, and there's no, you know, I read Perez as that associated coinciding is not enough. Yeah, and so, you know, then we get to terror the people, and this is a complete fit. I know that they, so the example you used in Beasley was State v. Huntley, the North Carolina case, where you are rolling around on a, riding on a horse, waving your gun around. And that's exactly what happened here. This guy was going in a car, waving his AK-47 around. And so this seems to be a Huntley case through and through. And so why is it independently affirmable on that basis? For three reasons. First is terror of the people requires that it be done. So while this was done in public, the video does not show that there was any bystanders. I don't think we have evidence that it was ever shown to a third party. So is this terrorizing, inducing conduct? Absolutely. Is it a terror to the public? No. Just as Bob De Niro standing in front of the mirror talking to himself, saying, are you talking to me, you know, that is terror-inducing behavior in the context of taxi driver. I don't think it disqualifies Bobby De Niro from ever possessing a gun if he uses marijuana. So that kind of gets to the temporal requirement. Again, I'm not sure the record is clear when that was produced. I think the record's clear it was never, at least there's no evidence that it was ever shared with a third party. And then, you know, I don't think we can look back in time and then pull that forward to the date of his arrest to make the circles overlap in the Venn diagram. Thank you. Mr. Admesen. May it please the Court. Good morning, Your Honors. Will Admesen for the United States. I think I'll organize my argument today in two points. First, I'll talk about the causation issue, and then I'll talk about terror to the people. I'm not going to talk about the habitual drunkard point. That's up at the Supreme Court. That argument was two hours long. I don't think I have that much time today. Talking about causation. So the government agrees that the specifics of what might be required for causation is somewhat in flux. And I'll make two points on causation. First, there's support in Perez that causation is only at the category level. Now, even if this Court interprets Perez to require causation at a user-specific level, the District Court essentially applied that principle here, applied Perez. And up, again, at this Court, there's no clear error in the District Court's factual findings. This is a factual finding case. There's no, really, argument that the District Court misapplied the principle. So on the categorical level, I think you're making maybe the same error opposing counsel's making, at least in my view. At the category, that's the facial challenge, is looking at a category. I mean, consistent with Jackson and the other cases, that's when you do the facial challenges when you're talking about a category. When you're doing as-applied, and Vesely and Cooper are clear, you are talking about the specific person. And the Court allowed those as-applied challenges, at least for G9 and Rahimi. Exactly. So two responses to your question. First, we would, I guess, frame the challenge differently. So it can still be the case that Mr. Baxter is bringing an as-applied challenge, but because of his membership in a specific user of a group of drug users, that regardless of any more specific facts about him, he loses his as-applied challenge. In other words, his challenge is not, I am an unlawful user, and so this is like a facial challenge. He's more specific, but he can lose that as-applied challenge because of some general principle. That's the government's argument at the Supreme Court, I think, in Amani with the habitual drunkard. But I guess my next question is, is that consistent with Perez, Vesely, and Cooper? I think we have rejected that. So I would respectfully disagree. And I read your concurrence in Ledbina, and I understand the Court's point there. I think that the category that we're talking about in this case is not unlawful users, but marijuana users with similar characteristics to Mr. Baxter. So it's different than just a total facial challenge. But I take Your Honor's point in your concurrence in Ledbina. Regarding the language in Perez, so Perez said, certain categories of active drug users classified either by drug type or the frequency or manner of a defendant's use may be disarmed consistent with the Second Amendment if the government shows that any member of that class, dot, dot, dot, would pose an unacceptable risk of danger if armed. And so that is the government's first line position here on causation, that it's not about Mr. Baxter specifically, but it's his characteristics as a drug user since age 13, and the withdrawal side effects that the expert testimony of the pharmacologist and toxicologist outlined for someone with characteristics like him. We're not talking about an 80-year-old grandma. We're talking about someone that used marijuana, as the District Court found, on a daily basis. So whatever, you know, maybe preconceived notions that you or I might have about how marijuana affects someone, on this record, and based on the only expert testimony in this record, marijuana, as Dr. Hughes just testified, is a causal factor for dangerousness, and the court can stop there. But it seems to me, though, on that point, you are considering some individual facts but not others. And I don't know where you're principally drawing a line as a principled matter, which is you're saying, oh, he's been doing it since he's 13, he's been doing this, this, and that, and then you're requiring everything else to be hypothetical after that. Is somebody who has these basic characteristics going to be dangerous? And so it's kind of like a half-as-applied challenge, whereas you're not taking into account the fact that he's gun-waving, he's doing all of these other things, too. So two points on that. First, I think the fact that there are at least some distinguishing characteristics for Mr. Baxter that distinguish him from unlawful users put this in as-applied territory. The second point, Your Honor talked about, you know, what factors make it different from just unlawful users in general, and the government does have a principled way of those factors, and it's PREZ. It may be classified either by drug type or frequency of a man or defendant's use. So we're using the characteristics identified by PREZ as a categorical. But I think that was PCP. That was referring, I mean, I know it's not cited, but I think they're saying that users of PCP may be so dangerous that nobody in that class could possibly have a gun. Well, I would point to, I guess, another point in the court's analysis in Cordova PREZ. So that was the general principle, certain categories of gun users. But then the court in Cordova PREZ actually goes on to say, nor did the district court ask if PREZ's marijuana use placed him in a category of people presenting a special danger of misuse sufficient to justify disarmament irrespective of any individual I was showing of dangerous. Now, I've talked about this general category a lot, and I understand that it's kind of a state of law in flux. So I want to talk about the specific facts as to Mr. Baxter. There was a hearing, there was testimony, and why those specific facts fit the analogs here. So there's two analogs. It's mentally ill and terror to the people. So I'll talk about those now. Even if the court might have questions about the level of generality, this court can just assume without deciding based on the record in front of this court. So the district court found that either Mr. Baxter was actively impaired or experiencing some type of the withdrawal effects of marijuana. His status, and this is a quote, his status as an unlawful unit directly impacted his behavior or conduct that mirrors that of a mentally ill and dangerous individual. That is a factual finding. You're talking too fast and too, not enunciating. I can't pick up the individual words. My apologies, Your Honor. And not to the mic and talk fast. My apologies, Your Honor. The district court said that his status as an unlawful user directly impacted his behavior, conduct that mirrors that of a mentally ill and dangerous individual. So here we have a factual finding by the district court that Mr. Baxter's conduct fits the analogs. And Mr. Baxter on appeal can't establish clear error for that conclusion. Well, and that's why I'm wondering whether we need to get into all this other business, because that's what the district court, I think, did it right, looked at the individual characteristics, and it is so clear. I mean, if you can't make the arguments that if the arguments that the other side is making don't work and you can't show clear error, it seems like he's dangerous, like most of the members of this class. Exactly, Your Honor. So that, you know, the government's making this our front line position on the category basis, based on the statements in present. And that would be the position that we urge this court to adopt if, you know, Hamani kind of comes out some weird way. But Judge Strass, exactly to your point, this is not a case where this court needs to kind of once and for all define causation and categories. I think this court has taken a very measured case-by-case approach. And so, yes, this court could absolutely look at Exhibit 476, where you have Mr. Baxter out of a window with an AK-47-style gun yelling, gang, gang, gang to whoever might be on the street. We would submit that that is the modern-day equivalent of the terror-to-people laws, which said that you could disarm someone that would ride around on a horse terrorizing people. Now, I think Mr. Baxter's argument to that is, well, you know, you don't know specifically if someone was terrorized, but that gets into, I think, too specific of a level of generality. It's about the principle, is this person dangerous to other people, not the mold, what was specifically going on. There's other terror-to-the-people facts here that make that analogy okay. So one of those is Mr. Baxter's comment on the conduct on the night that he was arrested. So when Mr. Baxter was arrested, it was because a passerby saw him in the midst of a gang fight, kind of evidencing that he had a firearm. And a witness, someone that wasn't in a gang, just a passerby, it was a busy bar district in Des Moines, came up to the cops and said, hey, I'm worried someone might get hurt. I'm terrified, in other words, that Mr. Baxter's going to use this gun that he's kind of showing that he has. That fits the analog. And so, Judge Strauss, to your point, this is not a case where this court needs to decide all these really, really difficult questions in a grand opinion, but can just say, in Baxter 1, we laid out the principle that the district court applied. This court can quote the district court's analysis that recognized the principles in Baxter and then say that there's no clear error based on the district court's factual findings. And for that reason, we'd ask the court to affirm. Thank you. Well, let's see. We'll make it a minute for rebuttal. Thank you. Judge Strauss, I agree that the gang, gang, gang episode was terrorizing. What is absent is that it was drug-induced. What is absent is that it was any temporally related at all to the events that are giving rise here. But wasn't he a drug user at the time? I mean, he had started drug using, and there's no evidence that, like, during this period, he was like, oh, no, no. I was off drugs for those eight months or whatever around it. But not to the point that he was mentally ill. I mean, that's why I think even as applied, you have to still show that the drug use rose to the level of being mentally ill rather than just taking one hit. Now, the district court specifically found that his behavior was gang-affiliated driven, which undermines the finding that there's causation. So, by the way, even if it fits all of the boxes, there's still not causation. Their own expert, Dr. Hustis, says there's no scientifically reliable way to make that type of retrospective judgment. And there is nothing in the record that says it was directly impacted. Coinciding, associated is not enough under Perez. Thank you. Thank you, counsel. Certainly a complicated issue. Also a complicated case. You've helped us in a short argument. Deal with the briefs covering more. We'll take it under advisement.